273 A.2d 485.

ADVISORY OPINION TO THE SENATE OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS.

FEBRUARY 8, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ADVISORY OPINION requested by Senate and relating to authority of General Assembly to provide by law for borrowing of money.

February 8, 1971

To the Honorable, the Senate of the
    State of Rhode Island and
        Providence Plantations

We have received from the Honorable Senate a resolution requesting, in accordance with the provisions of sec. 2 of art. XII of amendments to the constitution of this state, our written opinion upon certain questions of law. This request was made in connection with legislation presently pending before the Honorable Senate, which legislation is presently identified as S 189. We are accordingly

pleased to comply with the request of the Honorable Senate forthwith.

The exact questions propounded for our consideration are as follows:

"1. May the state of Rhode Island borrow funds for the uses of the state in excess of the amount of fifty thousand dollars ($50,000.) limited by the constitution, in anticipation of revenues as provided for in section 2 of Article XXXI of the amendments to the Rhode Island constitution and pay the sums so borrowed in subsequent fiscal years?

"2. May funds which are borrowed by the state in anticipation of revenues as provided for in section 2 of Article XXXI of the Rhode Island constitution from the state retirement fund for the general use and purposes of the state be repaid in the fiscal years subsequent to such borrowing or transfer?

"3. Does the state investment commission have authority to loan funds of the state employees' retirement system to the state general fund in the present fiscal year with repayment to be made in subsequent fiscal years?"

The basic thrust of each query as framed is whether sec. 2 of art. XXXI of amendments to the state constitution prohibits the state from borrowing money in anticipation of taxes or receipts from other sources when such borrowing is predicated on the condition that the sums so borrowed, or any part thereof, are not to be repaid within the fiscal year in which borrowed. Section 2 of amendment XXXI provides that, notwithstanding the prohibitory provisions of sec. 1 of amendment XXXI as to the amount that may be borrowed without the express consent of the people, the General Assembly may provide by law for the state to borrow in any fiscal year "* * * in anticipation of receipts from taxes, sums of money not exceeding twenty per cent of the receipts from taxes during the next prior fiscal year, and, in anticipation of re-

ceipts from other sources, additional sums of money, not exceeding ten per cent of the receipts from such other sources during the said next prior fiscal year * * *." Section 2 of amendment XXXI goes on to provide: "Any money so borrowed in anticipation of such receipts shall be repaid within the fiscal year of the state in which such borrowings take place."

Clearly, the framers of the amendment intended that when the General Assembly provided by law for the state to borrow money pursuant to the authority granted in sec. 2 of amendment XXXI, the monies so borrowed were to be repaid within the fiscal year within which they were borrowed. In our opinion, the language of the constitutional amendment is clear and unequivocal, and the authority therein given the legislature cannot be utilized to authorize the borrowing of monies under the terms of any agreement providing that repayment thereof is to be deferred beyond the fiscal year in which the borrowings take place.

Your Honors' inquiries may have been provoked by uncertainty as to the meaning of the last sentence of sec. 2 of art. XXXI of amendments, which reads as follows:

"No money shall be so borrowed in anticipation of such receipts in any fiscal year until all money so borrowed in all previous fiscal years shall have been repaid."

That sentence was undoubtedly included so as to insure that the state would be precluded from further borrowings in anticipation of revenues if for any reason it defaulted in its constitutional obligations to repay sums lawfully borrowed within the fiscal year in which those borrowings took place.

Because we take this view of the constitutional amend-

ment, we are compelled to conclude that each of the three questions as framed must be answered in the negative.

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER